NATIONAL UNION FIRE INSURANCE COMPANY OF PITTS-BURGH, PA., v. EMPIRE STATE SURETY COMPANY.

Argued February 18, 1909—Decided June 22, 1909.

Upon a rule to show cause, limited by the condition of its allowance to the question whether the verdict is supported by the evidence, where the evidence shows that the plaintiff did not perform its duty to the defendant, imposed by the condition of a fidelity bond requiring the plaintiff to give notice to the defendant of acts of the employe which came to its knowledge, tending to indicate that such employe was unreliable and unworthy of confidence, a verdict in favor of the plaintiff will be set aside.

On rule upon the plaintiff to show cause why a new trial should not be granted.

Before Justices REED, TRENCHARD and MINTURN.

For the plaintiff, *Edward A. & William T. Day.*

For the defendant, *Frederick S. Kellogg.*

The opinion of the court was delivered by

REED, J.   The rule to show cause is limited by the condition of its allowance to the question whether the verdict is supported by the evidence.

The defendant, as its name imports, is a surety company. It insures, among other things, the employer against the defalcation of his servants. In the present case, it insured the fidelity of one Fowler, who was employed by the plaintiff as one of its agents in its fire insurance business.

The defendant gave the plaintiff its bond dated August 8th, 1904, to indemnify the plaintiff against loss through the default or dishonesty of Fowler in connection with his duties pertaining to the position to which Fowler had been appointed by the plaintiff.

The bond contained several express conditions, the fourth one providing: "If at any time after the beginning of the term for which this bond is written, the employer suspects, or if there come to the notice or knowledge of the employer, any act, fact or information tending to indicate that the employe is or may be unreliable, deceitful, dishonest or unworthy of confidence, or that he is intemperate, gambling or indulging in other vices, the employer shall immediately so notify the company in writing; and if the employer fail or neglect to do so, this company shall not be liable for any act of the employe thereafter committed."

This bond was renewed in 1905, 1906 and 1907; so that the bond which covered the period of the employe's defalcation in this case, ran from August 8th, 1907, to August 8th, 1908.

Fowler, the employe, died September 22d, 1907. At the time of his death there was due to the plaintiff over $3,000, consisting of moneys collected by Fowler for premiums of policies issued through him for the plaintiff.

The counsel for the defendant insists that the verdict for the plaintiff for this amount should be set aside, because the evidence shows that the plaintiff did not perform its duty to the defendant imposed by the condition of the bond already mentioned; that the plaintiff did not give notice to the defendant of acts of Fowler's which came to its knowledge, tending to indicate that Fowler was unreliable and unworthy of confidence.

The business of Mr. Fowler was to accept business from brokers and issue policies in the plaintiff's company, and for his services he received a percentage upon the amount of premiums received. Fowler had begun his services with the plaintiff in November, 1904, and continued them until his death.

In the written contract of employment, there is no mention

of the collection of premiums or of their payment by Fowler to the company, and, of course, no mention of the period within which such premiums should be paid over after their receipt by Fowler. It appears, however, from the course of dealing, that Fowler did collect the premiums, and, of course, accounted for them, less his percentage for commissions. The premium book and policy·register kept by Fowler shows the amount of business done by him as agent of the plaintiff.

He collected in June, July and August, $3,656.15, which belonged to the plaintiff. He remitted none of this money. The usual time for remittance by the agents of the company is testified to have been sixty days, seventy days, and sometimes as long as one hundred and twenty days, and even five months. The amount collected in May he paid over in September. The amount he collected in April he paid over on August 8th, and the amount he collected in March he paid over on July 12th.

The president of the plaintiff's company testified that Fowler was one of the valued agents of the company; that he, like many others, was dilatory in making his collections. He testified that the agent gives credit to his patrons, brokers and private customers, and the company was compelled, by the competition in business, to allow credit, usually sixty days, extended sometimes to three, four and five months; that letters were written to the agents to stir them up, as well for their benefit as for the benefit of the company.

On cross-examination of Mr. Cole, the president, he admitted his signature to a letter written by him to Fowler on June 8th, 1907. In this letter the president said:

"My attention is directed to the balances which are delinquent at your agency. February balance of $1,755.51 is now nearly six weeks past due, and the March balance of $1,526.83 is due. This matter of delinquent balances has been discussed with you personally by the writer, and we had a very distinct understanding at the time. You must come to recognize the fact that we cannot be annoyed, or put to the necessity of annoying you with letters of this kind, and desire to state very positively that unless some arrangement can be made whereby

we are relieved of the continual annoyance of dunning you for balances, we would prefer to terminate the connection with your agency. Sixty days is the limit of credit that we allow to our agents. In your case we have made it seventy-five days, and the balances must be paid within that time. Please be guided accordingly."

The defendant relies upon the contents of this letter as such persuasive evidence of the knowledge of the company of a fact tending to indicate that Fowler was unreliable, and therefore that it was its duty to communicate that knowledge to the defendant, which it is admitted it did not do, that this verdict should not be permitted to stand.

The letter was competent to qualify and contradict the testimony of the president when on the stand. The letter, however, was put in by the defendant as substantive evidence binding the corporation as an admission.

This evidence must be regarded from the point of view which the charge of the trial judge left it to the jury. The judge charged that "the insurance company, the plaintiff, was not to judge as to what fact indicated unreliability in the agent; that it was for the jury to say whether or not the fact —if it was a fact—that Fowler was overdue in making his payments, was a fact or act which tended to show his unreliability." Again the trial judge charged: "If you find that there was a fixed time in which Fowler was to turn over his money to this insurance company, and he did not do so—I do not mean for an hour or for a day or two days—but if for several weeks, and especially if habitually he was delinquent and derelict in the observance of that contract, that was a fact and a circumstance which indicated his unreliability, and which should have been communicated to the surety company." And again: "If it be true that the limit was seventy-five days, and he was six weeks over that time, the insurance company should have notified the surety company, and otherwise they were not liable."

Taking these instructions as the standard by which the jury was bound to consider the case, it is manifest that the jury, in arriving at the verdict for the plaintiff, must have found,

either that the time of credit given to Fowler was more than seventy-five days, or they must have found that Fowler was not delinquent for several weeks over the period of seventy-five days.

While there was evidence that credit was extended to some agents in some instances for four and even five months, there is no evidence that such credit was extended to Fowler. The testimony in respect to Fowler's credit is contained in the letter of Mr. Cole, who says that his ordinary credit was seventy-five days. Mr. Cole did not say when on the stand that the contents of his letter to Fowler contained any misstatement of facts.

The testimony respecting Fowler's delinquency, upon the assumption that his period of credit was seventy-five days, is ample. Not only does his delinquency appear in the letter of Mr. Cole, but from all the testimony respecting the period intervening between Fowler's collections and payments it appears that he was delinquent in payment several weeks after his collections.

So assuming, as we must, that the jury found that the period of credit was more than seventy-five days, or that Fowler was not several weeks delinquent if it was seventy-five days, we think that the verdict cannot stand.

The rule is made absolute.