NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA., PLAINTIFF IN ERROR, v. EMPIRE STATE SURETY COMPANY, DEFENDANT IN ERROR.

Submitted June 28, 1910—Decided November 14, 1910.

A surety bond indemnifying the plaintiff against loss arising through the fraud or dishonesty of an agent, contained a provision that it should be void if the insured, having knowledge of any act, fact or information tending to indicate that the employe is or may be unreliable, deceitful, dishonest or unworthy of confidence, should neglect to so notify the obligor. In a suit on the bond it was shown that the obligee had written a letter to the agent notifying him that two payments were past due; that the matter of delinquent balances had been discussed with him theretofore, and that unless some arrangement could be made whereby the plaintiff could be relieved from the continual annoyance of dunning for balances it would prefer to terminate the agency. Other evidence in the cause permitted the inference that the agent was expected to give credit to policyholders for premiums, and that he in turn was to be allowed a reasonable credit; that he was slow in his remittances, in some cases not remitting until the end of four months after the policy had been issued, and that according to the course of business the settlement, when made, was expected to include all the premiums charged against him for the particular month to which the remittances applied, and that the business conduct of the agent corresponded with that of the average agent of the company. *Held*, that the facts stated in the letter were not, when read in connection with the other testimony in the case, conclusive evidence that the obligee had knowledge that the agent was unreliable, deceitful, dishonest or unworthy of confidence, which it was required to communicate to the obligor under the provision in the bond.

On error to the Supreme Court, Essex Circuit.

For the plaintiff in error, *Edward A. & William T. Day.*

For the defendant in error, *Frederick Snow Kellogg.*

The opinion of the court was delivered by

BERGEN, J.  This cause has been twice tried, and the present writ of error seeks a review of the correctness of the ruling of the trial court at the second trial in directing a verdict for the defendant on the testimony taken at the first trial, it being read to the jury by agreement of counsel.  The result of the first trial was a verdict for the plaintiff, which was set aside in the Supreme Court on rule to show cause (49 *Vroom* 122), but that conclusion is not applicable to the present case for the reason that the rule to show cause reserved all legal exceptions, and the question submitted to the Supreme Court was whether the verdict was supported by the evidence under the instructions given to the jury by the trial court, which instructions the Supreme Court was required to assume to be correct in disposing of the rule to show cause.  The Supreme Court did not affirm the correctness of the instructions of the trial judge, Mr. Justice Reed, who read the opinion for the court, saying: "This evidence must be regarded from the point of view in which the charge of the court left it to the jury."  As this writ of error challenges the legality of the direction of a verdict for the defendant, the application of the evidence here is not limited by the instructions given to the jury, as was the case on the rule to show cause.

By a written agreement between the National Union Fire Insurance Company and one J. William Fowler, bearing date August 4th, 1904, Fowler agreed to represent the insurance company as its agent in Brooklyn, N. Y., "using his best endeavors to increase the volume and improve the quality of the business written for said company."  The contract provides for a flat commission and also for a contingent one based on the net results for each year ending on the last day

of July, to be computed by deducting from the net premiums written and *remitted* to the company the amount of losses incurred on all risks written by said agent. The agreement does not, in express terms, state that Fowler was to collect and remit premiums, but it is to be implied, *first,* because the ascertainment of his contingent commissions is based upon the net premiums "remitted," and *secondly,* because the business he contracted to carry on could not otherwise be conducted, and it was so carried on with the approval of the insurance company for nearly three years. After the appointment of Fowler and on August 8th, 1907, the defendant in error executed and delivered to the plaintiff the surety bond in question, the condition of which obligated the defendant, subject to certain provisions therein set out, to make good and reimburse to the plaintiff such pecuniary loss of its money, securities or other personal property not exceeding $3,000, "as may be sustained by the employer by reason of said fraud or dishonesty of the employe in connection with the duties pertaining to the office or position" to which he had been appointed, occurring during the period of one year thereafter, and which might be discovered during such term or within six months thereafter. The only condition or provision subject to which the bond of indemnity was made, material to the present litigation, is to be found in the fourth condition which is as follows: "If at any time after the beginning of the term for which this bond is written, the employer suspect, or if there come to the notice or knowledge of the employer any act, fact or information tending to indicate that the employe is or may be unreliable, deceitful, dishonest, or unworthy of confidence, or that he is intemperate, gambling or indulging in other vices, the employer shall immediately so notify the company in writing at its principal offices in the borough of Brooklyn, city of New York; and if the employer fail or neglect so to do, the company shall not be liable for any act of the employe thereafter committed; and if at any time after the beginning of the term for which this bond is written there come to the notice or knowledge of the employer the fact that the employe is unreliable, deceitful, dis-

honest, or unworthy of confidence, or that he is intemperate, gambling or indulging in other vices, the company shall not be liable for any act of the employe thereafter committed."

The surety bond was continued from year to year by a certificate in writing. The first bears date August 9th, 1905, the second August 17th, 1906, and the last July 29th, 1907. These certificates are alike in form except necessary differences as to dates of issue and expiration, the last being "for a period beginning the 8th day of August, 1907, and ending the 8th day of August, 1908." Fowler died in September, 1907, insolvent, and indebted to the plaintiff, as the testimony shows, for the amount of premiums collected on policies issued during June, July and August, 1907, to recover which this suit was brought. The defence set up is that the plaintiff company had knowledge, after the beginning of the term for which the bond was issued, of facts tending to indicate that Fowler was or might be unreliable, deceitful, dishonest or unworthy of confidence, of which the surety company was entitled to have notice, and that the plaintiff having failed to give such notice the defendant, the surety company, is not liable for the losses sought to be recovered in this action.

This claim is rested upon an alleged delinquency on the part of Fowler in making remittances promptly which the defendant asserts is established by a letter written to him by the president of the company, of which the following is a copy:

"June 8th, 1907.

"*Mr. J. William Fowler, Brooklyn, New York.*

"DEAR SIR—My attention is directed to the balances which are delinquent at your agency. February balance of $1,755.41 is now nearly six weeks past due, and the Mar. balance of $1,526.83 is due. This matter of delinquent balances has been discussed with you personally by the writer, and we had a very distinct understanding at the time. You must come to recognize the fact that we cannot be annoyed or put to the necessity of annoying you with letters of this kind, and desire to state very positively that unless some arrangement can be made whereby we are relieved of the continual annoy-'

ance of dunning you for balances, we would prefer to terminate the connection with your agency. Sixty days is the limit of credit that we allow to our agents. In your case we have made it seventy-five days, and the balance must be paid within that time. Please be guided accordingly."

In directing the verdict the trial court apparently considered this letter as conclusive evidence of notice to the employer of facts tending to indicate that Fowler was unreliable, deceitful, dishonest or unworthy of confidence; failure to communicate which to the defendant discharged the bond. We think this letter must be construed in connection with and aided by, the circumstances which called it forth, and when this is done it cannot be given the conclusive effect necessary to support the ruling below. The agreement with Fowler does not fix any time for making remittances and the reason for this is explained by the course of business between the parties to it, as disclosed by the testimony in the cause, from which an inference may be drawn that Fowler was not expected to collect all the premiums in cash, but to allow credit to those to whom policies were issued by the complainant through the agency of Fowler, and that because of this the company extended credit to him. There was evidence from which the jury might infer that Fowler kept monthly accounts, known as accounts current, of all the business transacted during the month; that the company charged him with the total business done by him each month, and that his remittances for any one month was expected to include the total amount charged against him for such month; that the amount collected in any month did not represent the total amount charged against him for that month, and that he was given a reasonable time to collect all that was due before remitting. The jury might also find from the evidence that Fowler in some cases had delayed remitting for one hundred and twenty days; that he transacted his business in the same manner as the average agent, and that his books were examined by the company about once a month without disclosing any fact indicating that he was either unreliable, deceitful, dishonest or unworthy of confidence. We think that from

all this the jury might reasonably infer that the facts stated in the president's letter of June 8th, 1907, to Fowler, that the February balance was six weeks past due and the March balance overdue, did not conclusively show that Fowler was in default after having collected the money, nor even that he collected all of it, certainly the letter, taken in connection with the method of the company in dealing with Fowler, was not conclusive evidence that the company had notice or knowledge of any act or fact of which it was bound to notify the defendant under the provision of the bond. There being, in our opinion, a question for the jury, the direction in favor of the defendant was a manifest error. The defendant also urged that the certificate given by the plaintiff to it upon which it relied in continuing the bond from year to year was false. The certificate reads:

"THIS IS TO CERTIFY, That on the 15th day of July, 1907, the books and accounts of Mr. J. Wm. Fowler in our employ as Agent were examined by us and we found them correct in every respect, and all monies handled by him accounted for. He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guarantee bond should not be continued. His salary is now commission, and he is employed as Agent."

Whether this statement be true or false is a jury question, and there was evidence from which a jury might infer that it was true so far as the knowledge of the company extended, otherwise it would conclusively appear that the employer had the knowledge which it was bound to communicate to the defendant, and this we have said is not conclusively shown.

The other matters submitted by the defendant have been examined and found to be without merit, and the judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ.    13.